UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

FRANKLIN BASS, an individual,

    Plaintiff,

v.                                       Case No.: 2:24-cv-145-SPC-NPM

GENERAL MOTORS, LLC and
GULF COAST MOTORWORKS,

    Defendants.
_____/

## OPINION AND ORDER

Before the Court is Defendant Gulf Coast Motorworks' (Gulf Coast) Motion to Dismiss (Doc. 19), along with Plaintiff's Response in Opposition (Doc. 25). For the reasons below, the Court grants the Motion to Dismiss in part and denies in part.

### BACKGROUND

This is a case of buyer's remorse. In July 2023, Plaintiff Franklin Bass bought a pre-owned 2023 Chevrolet Corvette Z06 from Defendant Gulf Coast for $215,000. During the sale, he received a sheet called "Buyers Guide." The Buyers Guide contained two sets of warranty representations. The first section reads "WARRANTIES FOR THIS VEHICLE" with two options underneath:

> ☒AS IS-NO WARRANTY. You will pay all cost for any repairs. The dealer assumes no responsibility for any repairs regardless of any oral statement about the vehicle.

> ☐ WARRANTY.
> ☐ FULL WARRANTY
> ☐ LIMITED WARRANTY. The dealer will pay NA% of the labor and NA% of the parts for the covered systems that fail during the warranty period.  Ask the dealer for a copy of the warranty, and for any documents that explain warranty coverage, exclusions, and the dealer's right to repair obligations.  *Implied warranties* under your state's laws may give you additional rights.

The second section of the Buyers Guide is titled "NON-DEALER WARRANTIES FOR THIS VEHICLE."  There are various options underneath, including "MANUFACTURER'S WARRANTY STILL APPLIES," "MANUFACTURER'S USED VEHICLE WARRANTY APPLIES," and "OTHER USED VEHICLE WARRANTY APPLIES."  All of the "non-dealer warranty" boxes on the Buyers Guide are blank.

A few months after purchase, Bass discovered a problem with the Corvette's transmission.  He brought the Corvette to Estero Bay Chevrolet to service the transmission.  But Bass was informed at Estero Bay that the warranty on his Corvette was "blocked."  Bass paid $24,479.26 out of pocket to have his transmission problem fixed at another Chevrolet dealership.

Bass then embarked on a quest to determine what a "blocked warranty" was.  He called, emailed, and mailed letters to everyone from GM Customer Service to Chevrolet Customer Service to General Motors' CEO to the state Attorney General.  Bass' wife made inquiries via phone, eventually reaching a General Motors Executive Resolutions Team member.  This unidentified team member told her that General Motors does not block warranties.

The Chevrolet Executive Resolutions Team then followed-up via email and explained that the Corvette's Limited Warranty and Owner Assistance Information booklet says the following:

> **What is Covered**
> **Warranty Applies**
> This New Vehicle Limited warranty is for Chevrolet vehicles registered in the United States . . .
>
> **For Corvette Z06 only:** This warranty is generally transferable to subsequent owners of the vehicle. However, certain coverages will be VOIDED if ownership of the vehicle is transferred from the original owner within the first 6 months after delivery. See coverage details below.

Bass was not the initial purchaser of the Corvette. The original purchaser was Paul Joseph Franks, who bought it from Hendrick Chevrolet in Alabama in March 2023. Franks sold the Corvette to Defendant Gulf Coast within six months, who sold it to Bass.

The Limited Warranty and Owner Assistance Information booklet, which Bass did not receive before purchasing the Corvette, also contains other relevant provisions. It includes a warranty provision applicable to "transmission/transaxle coverage," and a General Motors disclaimer of the implied warranties of merchantability and fitness for a particular purpose.

## LEGAL STANDARD

A complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S.

3

544, 555 (2007). To survive a Rule 12(b)(6) motion, a complaint must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Bare "labels and conclusions, and a formulaic recitation of the elements of a cause of action," do not suffice. *Twombly*, 550 U.S. at 555. A district court should dismiss a claim when a party does not plead facts that make the claim facially plausible. *See Twombly*, 550 U.S. at 570.

A claim is facially plausible when a court can draw a reasonable inference, based on the facts pled, that the opposing party is liable for the alleged misconduct. *See Iqbal*, 556 U.S. at 678. This plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557 (internal quotations omitted)).

In considering a motion to dismiss, courts must accept all factual allegations in the complaint as true and draw all reasonable inferences in the light most favorable to the plaintiff. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). But acceptance of a complaint's allegations is limited to well-pled allegations. *See La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citations omitted). "A court considering a Rule 12(b)(6) motion is generally limited to the facts contained in the complaint and attached exhibits." *Melford v. Kahane & Assocs.*, No. 18-cv-60881, 2018 WL 5044601,

at *2 (S.D. Fla. Oct. 17, 2018) (citing *Wilchombie v. TeeVee Toons, Inc.,* 555 F.3d 949, 959 (11th Cir. 2009)).

## DISCUSSION

Four Counts in the Amended Complaint apply to Defendant Gulf Coast: Count 1 (violation of the Magnuson-Moss Act), Count 3 (violation of the Florida Deceptive and Unfair Trade Practices Act), Count 7 (per se violation of the Florida Deceptive and Unfair Trade Practices Act), and Count 8 (negligence).

But Gulf Coast's entire dismissal argument can be boiled down to this: Gulf Coast gave Bass the Buyers Guide, and the Buyers Guide said there was no warranty on the Corvette, so Gulf Coast should be off the hook. Bass' response can also be distilled into one sentence: Gulf Coast's Motion to Dismiss raises disputed questions of fact, so the deficiencies in Bass' case should be punted until the summary judgment stage. Then there is one side issue—whether Bass' Amended Complaint satisfies the heightened pleading standard of Federal Rule of Civil Procedure 9.

First, the Court laments the poor-quality briefing about the Court considering affirmative defenses at the motion to dismiss stage. To be sure, courts considering a motion to dismiss are largely confined to the four corners of the complaint. But nearly all of Bass' claims against Gulf Coast are grounded in Florida law (the exception being Count 1). And Florida Rule of Civil Procedure 1.110 says "[a]ffirmative defenses appearing on the face of a

5

prior pleading may be asserted as grounds for a motion or defense under rule 1.140(b)." That means an affirmative defense "may be considered in resolving a motion to dismiss when the complaint affirmatively and clearly shows the conclusive applicability of the defense to bar the action." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1276 (11th Cir. 2004). And a "complaint" includes "attachments thereto," which in this case means the Buyers Guide. *Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1368-69 (11th Cir. 1997) (internal citation omitted).

But in the absence of meaningful briefing on considering affirmative defenses at this stage, the Court will not dismiss any counts on this ground.

**A. Count 1: Violation of the Magnuson-Moss Act**

Bass' first claim arises under the Magnuson-Moss Warranty Act (MMWA), 15 U.S.C. §§ 2301-2312. The MMWA provides a "statutory cause of action to consumers 'damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation imposed by the Act or under a written warranty, implied warranty or service contract.'" *Cunningham v. Fleetwood Homes of Ga., Inc.*, 253 F.3d 611, 617-18 (11th Cir. 2001) (quoting 15 U.S.C. § 2310(d)(1)).

Bass says Gulf Coast violated the MMWA by not providing him with General Motors' written warranty, which he says is a breach of 16 C.F.R. § 702.3. (Doc. 15 at 16-17). In its Motion to Dismiss, Gulf Coast argues that the

MMWA only applies "if the seller provides a written warranty," and Gulf Coast did not provide a warranty. (Doc. 19 at 4).

Gulf Coast cites 16 C.F.R. § 702.3(a) in support of its argument that the MMWA only applies if the *seller* provides a *seller's* warranty. 16 C.F.R. § 702.3(a) says, "the seller of a consumer product with a written warranty shall make a text of the warranty readily available for examination by the prospective buyer." The natural reading of this provision does not limit it to sellers providing seller warranties—it simply says the seller of "a consumer product with a written warranty" is bound to provide the warranty.

Bass' Amended Complaint concerns Gulf Coast's failure to provide him with the terms of the Corvette's *General Motors* warranty, not failure to provide him with the terms of a *Gulf Coast* warranty. (Doc. 15 at 17). And Gulf Coast's argument that the MMWA is limited to sellers providing seller warranties is unpersuasive. So Count 1 survives.

**B. Counts 3 and 7: Violation of FDUTPA, Per Se Violation of FDUTPA**

To establish a cause of action under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), a plaintiff must sufficiently allege: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *Rollins v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006). "A deceptive practice is one that is likely to mislead consumers, and an unfair practice is one that 'offends established public policy' or is 'immoral, unethical, oppressive,

7

unscrupulous or substantially injurious to consumers.'" *Bookworld Trade, Inc. v. Daughters of St. Paul, Inc.*, 532 F. Supp. 2d 1350, 1364 (M.D. Fla. 2007) (internal citation omitted).

A "per se" FDUTPA violation occurs when the defendant violates "[a]ny rules promulgated pursuant to the Federal Trade Commission Act" or "[a]ny law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices." Fla. Stat. § 501.203(3)(a), (c).

Because Bass' Counts 3 and 7 are substantially similar, Gulf Coast addresses them in one argument in its Motion to Dismiss. (Doc. 15 at 5). The Court will also address them together.

In Count 3, Bass alleges that Gulf Coast engaged in unfair or deceptive practices by: (1) not providing Bass with General Motors' warranty before sale, (2) not telling Bass that certain General Motors warranty coverages were void because Franks sold the car within six months of delivery, (3) not telling Bass that General Motors disclaimed the warranties of merchantability and fitness, (4) not providing General Motors' warranty with the Corvette's sales agreement, and/or (5) "[d]isclaimer language in less than 14-point font and one color with no headings in an adhesion style disclosure." (Doc. 15 at 22-23; 31-32). In Count 7, Bass alleges the same, except he says Gulf Coast's actions or

8

inactions spelled out above are per se FDUTPA violations due to "the faulty Uniform Commercial Code warranty disclosure." (Doc. 15 at 31 n.3).

Gulf Coast argues in its Motion to Dismiss that Bass cannot meet the first element of a FDUTPA claim—a deceptive act—because a reasonable consumer would have known from the Buyers Guide that the Corvette had no warranties. For reasons previously discussed, the Court will not consider the Buyers Guide as dispositive for now.

Next, Gulf Coast argues that Bass' FDUTPA counts are subject to the heightened fraud pleading standard under Federal Rule of Civil Procedure 9(b) and that Bass' claims fall short.

Generally, Federal Rule of Civil Procedure 8 governs pleading. Under Federal Rule of Civil Procedure 8, a plaintiff need only set forth: (1) a short and plain statement of the grounds for the court's jurisdiction; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought.

Federal Rule of Civil Procedure 9, however, sets forth a more stringent standard for claims sounding in fraud: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To satisfy this "particularity" standard, a plaintiff must allege: "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which

9

these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Brooks v. Blue Cross & Blue Shield,* 116 F.3d 1364, 1380 (11th Cir. 1997).

Courts are split as to whether FDUTPA claims are subject to heightened pleading under Rule 9. *Compare Allstate Ins. Co. v. Auto Glass Am., LLC,* 418 F. Supp. 3d 1009, 1021-22 (M.D. Fla. 2019) *with Blair v. Wachovia Mortg. Corp.,* No. 5:11-cv-566-Oc-37TBS, 2012 WL 868878, at *3 (M.D. Fla. Mar. 14, 2012). *See also Eli Lilly & Co. v. Tyco Integrated Sec., LLC*, No. 13-80371-CIV-BLOOM/Valle, 2015 WL 11251732, at *6 (S.D. Fla. Feb. 10, 2015).

But this Court need not decide the applicability of Rule 9 to Bass' FDUTPA claims because they fail even under Rule 8's less stringent standard.

Rule 8 requires that a complaint "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when a court can draw a reasonable inference, based on the facts pled, that the opposing party is liable for the alleged misconduct. *See Iqbal*, 556 U.S. at 678.

The Court cannot ignore that "[d]isclaimer language in less than 14-point font and one color with no headings in an adhesion style disclosure" does not put Gulf Coast on notice of what it is defending against. (Doc. 15 at 22-23;

31-32). There are two sets of warranty documents allegedly applicable to this action—General Motors' warranty, contained in the Limited Warranty and Owner Assistance Information booklet—and the Buyers Guide provided by Gulf Coast. The Court has no idea which warranty has "[d]isclaimer language in less than 14-point font and one color with no headings in an adhesion style disclosure."

Based on the "Facts" in Bass' Amended Complaint, the Court assumes Bass is referring to the General Motors warranty. (Doc. 15 at 12-13) ("This [General Motors] 'Disclaimer' appears to be in an inconspicuous 10 [sic] font or smaller . . . [it] has no title . . . and is in the same size font typeface and color as the surrounding text"). The Court's interpretation is strengthened by Bass' FDUTPA claims against General Motors, which contain the same objection to warranty text. (Doc. 15 at 24-25; 29-30). But from a practical perspective, the Court's interpretation of Bass' Amended Complaint makes little sense. Under what legal theory would *Gulf Coast* be responsible for the size and color of *General Motors'* warranty provisions?

Even under Rule 8, Bass' Amended Complaint cannot be said to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). If the Court is not on notice of what claim(s) Bass is asserting against Gulf Coast, it is safe to assume that Gulf Coast is not on notice either. Gulf Coast and General Motors

11

are distinct defendants with distinct roles in relation to this case. They are not interchangeable. So generalized, copy and paste allegations in a complaint will not suffice.

Accordingly, both Count 3 and 7 are dismissed without prejudice.[1]

**C. Count 8: Negligence**

In the alternative, Bass' Amended Complaint alleges that Gulf Coast was negligent. According to Bass, Gulf Coast had a duty to disclose General Motors' policy that "certain coverages will be VOIDED" if ownership of the Corvette is transferred within six months. (Doc. 15 at 33). Gulf Coast breached this duty, according to Bass, by not providing Bass with the Limited Warranty and Owner Assistance Information booklet "and/or negligently disclos[ing] that the warranty by the manufacturer was 'blocked,' but fail[ing] to disclose what this actually meant for the vehicle."[2] (Doc. 15 at 33). Bass then summarily asserts that "as a direct and proximate result of [Gulf Coast's] breach, Mr. Bass has been damaged." (Doc. 15 at 34).

In a now-predictable defense, Gulf Coast argues that any duty it had to disclose or disclaim the General Motors warranty was satisfied by its provision

---

[1] Additionally, Count 7 alleges a per se FDUTPA violation based on "the UCC." (Doc. 15 at 31 n.3). Since Bass is amending his Amended Complaint, he should cite the actual Florida Statute he is relying on (presumably Fla. Stat. § 672.316) in Count 7, rather than burying this citation in his "Facts" section.
[2] According to Bass' "Facts" in his Amended Complaint, it was Estero Bay Chevrolet that informed him that the warranty on his Corvette was "blocked," not Gulf Coast. (Doc. 15 at 5). So no "Facts" seem to match this allegation.

12

of the Buyers Guide. Additionally, Gulf Coast says Bass cannot satisfy the causation element of negligence because "as-is" contracts negate causation. (Doc. 19 at 7).

For reasons already discussed, the Court will not consider the Buyers Guide as dispositive—yet. Accordingly, Count 8 remains.

### D. Jurisdiction

Finally, Gulf Coast does not raise any jurisdictional concerns in its Motion to Dismiss. But the Court has "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y.H. Corp.*, 546 U.S. 500, 514 (2006) (citing *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 583 (1999)).

Bass' link to federal court comes from the MMWA. But unlike most federal causes of action, the MMWA has its own jurisdictional amount in controversy requirement—$50,000. 15 U.S.C. § 2310(d). Bass claims his damages include "up to the full purchase price of the [Corvette]," which exceeds $50,000. (Doc. 15 at 19, 23, 33, 34). But the Court questions whether the full purchase price of the vehicle is a cognizable remedy. *See Schimmer v. Jaguar Cars, Inc.,* 384 F.3d 402 (7th Cir. 2004). The Court therefore orders all parties to submit briefs on whether Bass has met the MMWA's amount in controversy requirement.

Accordingly, it is now

**ORDERED:**

1. Defendant Gulf Coast Motorworks' Motion to Dismiss (Doc. 19) is **GRANTED in part** and **DENIED in part**.

2. Plaintiff Bass' Counts 3 and 7 of his Amended Complaint (Doc. 15) are **DISMISSED without prejudice**.

3. Plaintiff Bass is **DIRECTED** to file a Second Amended Complaint consistent with this Opinion and Order on or before **September 27, 2024**.

4. Plaintiff Bass and Defendant Gulf Coast Motorworks are **DIRECTED** to file briefs consistent with this Opinion and Order on or before **October 11, 2024**.

**DONE** and **ORDERED** in Fort Myers, Florida on September 16, 2024.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record