UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

FRANKLIN BASS, an individual,

    Plaintiff,

v.                                         Case No.:  2:24-cv-145-SPC-NPM

GENERAL MOTORS, LLC and
GULF COAST MOTORWORKS,

    Defendants.
_____/

## OPINION AND ORDER

Before the Court is Defendant General Motors' Motion to Dismiss (Doc. 22), along with Plaintiff's Response in Opposition (Doc. 27). For the reasons below, the Court grants the Motion to Dismiss.

## BACKGROUND

This is a case of buyer's remorse. In July 2023, Plaintiff Franklin Bass bought a pre-owned 2023 Chevrolet Corvette Z06 from Defendant Gulf Coast Motorworks for $215,000. During the sale, he received a sheet called "Buyers Guide." The Buyers Guide contained two sets of warranty representations. The first section reads "WARRANTIES FOR THIS VEHICLE" with two options underneath:

> ☒AS IS-NO WARRANTY. You will pay all cost for any repairs. The dealer assumes no responsibility for any repairs regardless of any oral statement about the vehicle.

> ☐WARRANTY.
> ☐FULL WARRANTY
> ☐LIMITED WARRANTY. The dealer will pay NA% of the labor and NA% of the parts for the covered systems that fail during the warranty period. Ask the dealer for a copy of the warranty, and for any documents that explain warranty coverage, exclusions, and the dealer's right to repair obligations. *Implied warranties* under your state's laws may give you additional rights.

The second section of the Buyers Guide is titled "NON-DEALER WARRANTIES FOR THIS VEHICLE." There are various options underneath, including "MANUFACTURER'S WARRANTY STILL APPLIES," "MANUFACTURER'S USED VEHICLE WARRANTY APPLIES," and "OTHER USED VEHICLE WARRANTY APPLIES." All the "non-dealer warranty" boxes on the Buyers Guide are blank.

A few months after purchase, Bass discovered a problem with the Corvette's transmission. He brought the Corvette to Estero Bay Chevrolet to service the transmission. But Bass was informed at Estero Bay that the warranty on his Corvette was "blocked." Bass paid $24,479.26 out of pocket to have his transmission problem fixed at another Chevrolet dealership.

Bass then embarked on a quest to determine what a "blocked warranty" was. He called, emailed, and mailed letters to everyone from GM Customer Service to Chevrolet Customer Service to General Motors' CEO to the state Attorney General. Bass' wife made inquiries via phone, eventually reaching a General Motors Executive Resolutions Team member. This unidentified team member told her that General Motors does not block warranties.

2

The Chevrolet Executive Resolutions Team then followed-up via email and explained that the Corvette's Limited Warranty and Owner Assistance Information booklet says the following:

> **What is Covered**
> **Warranty Applies**
> This New Vehicle Limited warranty is for Chevrolet vehicles registered in the United States . . .
>
> **For Corvette Z06 only:** This warranty is generally transferable to subsequent owners of the vehicle. However, certain coverages will be VOIDED if ownership of the vehicle is transferred from the original owner within the first 6 months after delivery. See coverage details below.

Bass was not the initial purchaser of the Corvette. The original purchaser was Paul Joseph Franks, who bought it from Hendrick Chevrolet in Alabama in March 2023. Franks sold the Corvette to Defendant Gulf Coast Motorworks within six months, who sold it to Bass.

The Limited Warranty and Owner Assistance Information booklet, which Bass did not receive before purchasing the Corvette, also contains other relevant provisions. It includes a warranty provision applicable to "transmission/transaxle coverage," and a General Motors disclaimer of the implied warranties of merchantability and fitness for a particular purpose.

## LEGAL STANDARD

A complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 (2007). To survive a Rule 12(b)(6) motion, a complaint must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Bare "labels and conclusions, and a formulaic recitation of the elements of a cause of action," do not suffice. *Twombly*, 550 U.S. at 555. A district court should dismiss a claim when a party does not plead facts that make the claim facially plausible. *See Twombly*, 550 U.S. at 570.

A claim is facially plausible when a court can draw a reasonable inference, based on the facts pled, that the opposing party is liable for the alleged misconduct. *See Iqbal*, 556 U.S. at 678. This plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557 (internal quotations omitted)).

In considering a motion to dismiss, courts must accept all factual allegations in the complaint as true and draw all reasonable inferences in the light most favorable to the plaintiff. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). But acceptance of a complaint's allegations is limited to well-pled allegations. *See La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citations omitted). "A court considering a Rule 12(b)(6) motion is generally limited to the facts contained in the complaint and attached exhibits." *Melford v. Kahane & Assocs.,* No. 18-cv-60881, 2018 WL 5044601,

4

at *2 (S.D. Fla. Oct. 17, 2018) (citing *Wilchombie v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009)).

## DISCUSSION

Four Counts in the Amended Complaint apply to General Motors: Count 2 (violation of the Magnuson-Moss Act), Count 4 (violation of the Florida Deceptive and Unfair Trade Practices Act), Count 5 (breach of implied warranties of merchantability and trade), and Count 6 (per se violation of the Florida Deceptive and Unfair Trade Practices Act).

First, the Court laments the poor-quality briefing about the Court considering affirmative defenses at the motion to dismiss stage. To be sure, courts considering a motion to dismiss are largely confined to the four corners of the complaint. But nearly all of Bass' claims against General Motors are grounded in Florida law (the exception being Count 2). And Florida Rule of Civil Procedure 1.110 says "[a]ffirmative defenses appearing on the face of a prior pleading may be asserted as grounds for a motion or defense under rule 1.140(b)." That means an affirmative defense "may be considered in resolving a motion to dismiss when the complaint affirmatively and clearly shows the conclusive applicability of the defense to bar the action." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1276 (11th Cir. 2004).

But in the absence of meaningful briefing on considering affirmative defenses at this stage, the Court will not dismiss any counts on this ground.

## A. Count 2: Violation of the Magnuson-Moss Act

Bass' Count 2 arises under the Magnuson-Moss Warranty Act (MMWA), 15 U.S.C. §§ 2301-2312. The MMWA provides a "statutory cause of action to consumers 'damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation imposed by the Act or under a written warranty, implied warranty or service contract.'" *Cunningham v. Fleetwood Homes of Ga., Inc.*, 253 F.3d 611, 617-18 (11th Cir. 2001) (quoting 15 U.S.C. § 2310(d)(1)).

Bass says General Motors violated the MMWA by "disclaiming implied and express warranties inconspicuously for the Corvette Z06 in a warranty booklet" in violation of 16 C.F.R. § 702.3. (Doc. 15 at 20).

General Motors launches a multi-front attack against this claim: (1) General Motors is a "manufacturer," "warrantor," or "supplier" under 16 C.F.R. § 702.1 (not a "seller"), (2) Bass knew from the Buyers Guide that there were no warranties on the Corvette, and (3) Bass lacks privity to maintain an implied warranty claim against General Motors under Florida law. (Doc. 22 at 7-12).

Bass counters that General Motors' status as a "seller" is a disputed fact which cannot be decided at this stage. (Doc. 27 at 12, 18-19). Bass also argues that he was in privity with General Motors or, in the alternative, that privity is not required under Florida law. (Doc. 27 at 19-21).

6

As discussed above, the Court will not consider affirmative defenses as dispositive at this stage. This disposes of General Motors' defense that Bass knew from the Buyers Guide that the Corvette had no warranties.

General Motors' privity argument is also inappropriate at this stage. Even if this argument is not an affirmative defense, whether privity is required is an unsettled issue. *Contrast In re Takata Airbag Prods. Liab. Litig.*, 193 F. Supp. 1324, 1346 (S.D. Fla. 2016) *and Padilla v. Porsche Cars of N. Am., Inc.,* 391 F. Supp. 3d 1108, 1117-1119 (S.D. Fla. 2019) *with Weiss v. GM LLC*, 418 F. Supp. 3d 1173, 1183 (S.D. Fla. 2019). *See also Fed. Ins. Co. v. Lazzara Yachts of N. Am., Inc.,* 2010 WL 1223126, at *19-20 (M.D. Fla. Mar. 24, 2010). So privity does not go to Bass' failure to state a claim, but merely to Florida courts' uncertainty about whether Bass has stated a claim. At the motion to dismiss stage, the Court must draw all reasonable inferences in the light most favorable to the plaintiff. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

This leaves General Motors' argument about the definitions of "seller" and "manufacturer/warrantor." Here is where things get messy. On its face, Count 2 concerns a breach of 16 C.F.R. § 702.1, under which "sellers" have different duties than "warrantors." But in his Response in Opposition, Bass discusses Count 2 as a breach of Florida's Uniform Commercial Code (UCC).

7

(Doc. 27 at 10-11). The UCC and 16 C.F.R. § 702.1 define "seller" differently.[1] And the UCC and 16 C.F.R. § 702.3 set forth different obligations for sellers.[2] So the Court—and presumably General Motors—is left with an obvious question: What is Count 2?

But the ambiguity does not stop there. In his Amended Complaint, Bass says that General Motors is a manufacturer (not a seller) for purposes of the UCC. (Doc. 15 at 14). Yet in his Response in Opposition, he maintains that General Motors is a seller (not a manufacturer) under that same UCC. (Doc. 27 at 15). Or more precisely put, he argues that a manufacturer is actually a seller under Florida's UCC. For this proposition, he cites a single bankruptcy case.[3]

But wait—there's more. To further complicate matters, Bass accuses General Motors of "puzzling[ly]" discussing implied warranty law when addressing Count 2 in its Motion to Dismiss. Bass says that Count 2 "is a claim for inadequate express warranty—not implied." (Doc. 27 at 13). But Bass'

---

[1] Fla. Stat. 672.103 defines "seller" as "a person who sells or contracts to sell goods." 16 C.F.R. § 702.1(e) defines "seller" as "any person who sells or offers for sale for purposes other than resale or use in the ordinary course of the buyer's business any consumer product."

[2] *Contrast* 16 C.F.R. § 702.3(a) *with* Fla. Stat. §§ 672.313-672.318.

[3] The logic of this bankruptcy case traces back to the Official Comments to Fla. Stat. § 672.313, which say, "Although this section is limited in its scope and direct purpose to warranties made by the seller to the buyer as part of a contract for sale, the warranty sections of this Article are not designed in any way to disturb those lines of *case law growth* which have recognized that warranties need not be confined either to sales contracts or to the direct parties to such a contract." (emphasis added). The Comment then cites developments in case law about *bailments for hire*. This case does not concern a bailment for hire, and Bass' position does not seem to be supported by any "case law growth."

8

Count 2 reads: "Defendant GM breached 16 C.F.R. § 702.3 of the Federal Trade Commission Regulations by disclaiming *implied* and express warranties inconspicuously for the Corvette Z06 in a warranty booklet." (emphasis added). Given the *express* language in Count 2 about *implied* warranties, the Court does not find General Motors' discussion of implied warranties "puzzling."

At the motion to dismiss stage, the Court's duty is not limited to discerning whether Bass has made a vaguely possible, yet indecipherable claim. The Court's duty extends to ensuring that his Amended Complaint "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It is clear from the Motion to Dismiss, the Response in Opposition, the language of the Amended Complaint, and the applicable law that no one—not the Court, not General Motors, and not even Bass himself knows what his claim is in Count 2. So for that reason, Count 2 is dismissed without prejudice.

**B. Counts 4 and 6: Violation of FDUTPA, Per Se Violation of FDUTPA**

To establish a cause of action under FDUTPA, a plaintiff must sufficiently allege: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *Rollins v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006). "A deceptive practice is one that is likely to mislead consumers, and an unfair practice is one that 'offends established public policy' or is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Bookworld*

9

*Trade, Inc. v. Daughters of St. Paul, Inc.*, 532 F. Supp. 2d 1350, 1364 (M.D. Fla. 2007) (internal citation omitted).

A "per se" FDUTPA violation occurs when the defendant violates "[a]ny rules promulgated pursuant to the Federal Trade Commission Act" or "[a]ny law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices." Fla. Stat. § 501.203(3)(a), (c).

Because Bass' Counts 4 and 6 are substantially similar, the Court addresses them together.

In Count 4, Bass alleges that General Motors engaged in unfair or deceptive practices by: (1) failing to give the *initial* purchaser of the Corvette "proper information" regarding the limited warranty, (2) failing to advise the *initial purchaser* of the Corvette that certain warranty coverages would be voided if ownership was transferred within six months of delivery, (3) failing to advise the *initial* purchaser that the written warranty disclaimed the warranties of merchantability and fitness, (4) failing to incorporate a disclaimer clause into the contract between themselves and the *initial purchaser*, and (5) "[d]isclaimer language in less than 14-point font and one color with no headings in an adhesion style disclosure." (Doc. 15 at 25). In Count 6, Bass alleges the same, except he says General Motors' actions or

10

inactions spelled out above are per se FDUTPA violations because they violate "federal car warranty rights" in "5 U.S.C.A. § 2310(b)."

Let's begin with the low-hanging fruit—Title 5 of the United States Code pertains to government organization and employees, so Title 5 has no relation to this lawsuit between Bass and General Motors. If the Court reads the Amended Complaint graciously, it could read the Amended Complaint to say "*15* U.S.C. § 2310(b)." But that reading does not help much, because 15 U.S.C. § 2310(b) reads as follows: "It shall be a violation of section 45(a)(1) of this title for any person to fail to comply with any requirement imposed on such person by this chapter (or a rule thereunder) or to violate any prohibition contained in this chapter (or a rule thereunder)." So what "requirement" or "prohibition" has General Motors violated? The Amended Complaint does not say. So once again, the Court—and General Motors—is left to guess. So for that reason, Count 6 is dismissed without prejudice.

And this brings the Court to a problem that spans both Count 4 and Count 6—the "initial purchaser" problem. Nearly all of General Motors' alleged unfair or deceptive practices involve General Motors' supposed duties to the initial purchaser of the Corvette. But Bass was not the initial purchaser of the Corvette. Bass did not even buy the Corvette *from* the initial purchaser. The Amended Complaint is silent on how Bass has standing to bring claims on

11

behalf of Paul Franks. While not explicitly raised by General Motors,[4] standing is a threshold jurisdictional question—and the Court needs answers. So Count 4 is dismissed without prejudice and Count 6—though already dismissed—is also dismissed without prejudice for this reason.

**C. Count 5: Breach of Implied Warranties**

In this Count, Bass claims that General Motors is a merchant of Corvettes, and General Motors (sold? manufactured?)[5] a Corvette which is not fit for its ordinary purpose because it has a faulty transmission. (Doc. 15 at 27). Bass brings this claim for "Breach of Statutory Implied Warranties of Merchantability and Use of Trade" under Florida Statute § 672.607—a statute about acceptance of goods. With some déjà vu, the Court reads Count 5 generously to cite Florida Statute § 672.314—a statute which actually concerns the implied warranties of merchantability and usage of trade.

In addition to citing the wrong Florida statute in Count 5,[6] Bass also words Count 5 so vaguely that it is unclear what he is alleging. For instance, he acknowledges that the warranty is implied in *a contract for the sale of goods* if the *seller* is a merchant with respect to goods of that kind. He then says that

---

[4] General Motors simply says, "Plaintiff does not and cannot allege that GM did not provide a copy of the written Limited Warranty with the subject vehicle, as it does for every vehicle GM manufactures." (Doc. 22 at 8).
[5] This Count noticeably avoids describing General Motors' relationship to the Corvette.
[6] Bass does eventually cite Fla. Stat. § 672.314 in his Response in Opposition. (Doc. 27 at 17). But this statute is not cited anywhere in his Amended Complaint. (Doc. 15).

General Motors is a merchant. But is General Motors the "seller" at issue? What "contract of sale" does this Count concern if there is no contract between Bass and General Motors? At the motion to dismiss stage, bare "labels and conclusions, and a formulaic recitation of the elements of a cause of action," do not suffice. *Twombly*, 550 U.S. at 555. For these reasons, Count 5 is dismissed without prejudice.

**D. Jurisdiction**

Finally, General Motors does not raise any jurisdictional concerns in its Motion to Dismiss. But the Court has "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y.H. Corp.*, 546 U.S. 500, 514 (2006) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)).

Bass' link to federal court comes from the MMWA. But unlike most federal causes of action, the MMWA has its own jurisdictional amount in controversy requirement—$50,000. 15 U.S.C. § 2310(d). Bass claims his damages include "up to the full purchase price of the [Corvette]," which exceeds $50,000. (Doc. 15 at 19, 23, 33, 34). But the Court questions whether the full purchase price of the vehicle is a cognizable remedy. *See Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402 (7th Cir. 2004). The Court therefore orders all parties to submit briefs on whether Bass has met the MMWA's amount in controversy requirement.

13

Accordingly, it is now

**ORDERED:**

1. Defendant General Motors' Motion to Dismiss (Doc. 22) is **GRANTED**.

2. Plaintiff Bass' Counts 2, 4, 5 and 6 of his Amended Complaint (Doc. 15) are **DISMISSED without prejudice**.

3. Plaintiff Bass is **DIRECTED** to file a Second Amended Complaint consistent with this Opinion and Order on or before **September 27, 2024**.

4. Plaintiff Bass and Defendant General Motors are **DIRECTED** to file briefs consistent with this Opinion and Order on or before **October 11, 2024**.

**DONE** and **ORDERED** in Fort Myers, Florida on September 16, 2024.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record

14